UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TAMARA LOHR and RAVIKIRAN SINDOGI, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NISSAN NORTH AMERICA, INC., and NISSAN MOTOR CO., LTD.,<br><br>Defendants. | Case No. C16-1023RSM<br><br>ORDER GRANTING IN PART AND DENYING IN PART NISSAN'S MOTION TO DISMISS |

## I.  INTRODUCTION

This matter comes before the Court on Defendant Nissan North America, Inc.'s ("Nissan") Motion to Dismiss. Dkt. #22. The Court has determined that oral argument is unnecessary. For the reasons stated below, the Court GRANTS Nissan's motion in part and DENIES it in part.

## II.  BACKGROUND

Plaintiffs Tamara Lohr and Ravikiran Sindogi allege that panoramic sunroofs available on several 2008 to 2016 car models manufactured by Defendant Nissan and Defendant Nissan Motor Company, Ltd. (collectively "Defendants") are defectively designed and can

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 1

spontaneously shatter. Dkt. #12 ¶¶ 3, 11-27.  Plaintiffs claim that Defendants are aware of the panoramic sunroofs' defective design and, instead of warning consumers, choose to conceal the defect. *Id*. ¶¶ 27-32, 39-43, 51, 58-60, 63, 70.  Plaintiffs also claim that Defendants benefit from the concealment of the panoramic sunroof design defect because it enables them to benefit from lease and sale of vehicles to "unwitting consumers." *See id*. ¶¶ 42, 52.  Plaintiffs also allege that the concealment of this design defect allows Defendants to systematically deny coverage when a customer's defective panoramic sunroof shatters. *See id*. ¶¶ 44-47.  Both Ms. Lohr and Mr. Sindogi claim the panoramic sunroofs of their leased or purchased Nissan vehicles spontaneously shattered as they drove on the highway. *Id*. ¶¶ 54, 65.

     Ms. Lohr claims she drove her leased 2015 Nissan Rogue SV for less than six months before her panoramic sunroof unexpectedly shattered. *See id*. ¶¶ 48, 54.  Ms. Lohr was driving on the highway when her panoramic sunroof shattered and glass from the sunroof fell on her head and body. *Id*. at ¶ 54.  There was no indication that anything fell on her vehicle's panoramic sunroof. *Id*. at ¶ 55.  Ms. Lohr drove about twenty miles to a dealership where her vehicle could be repaired. *Id*. at ¶ 57.  Because Ms. Lohr's vehicle was still under warranty, the dealership replaced her panoramic sunroof and she was provided with a free loaner vehicle. *Id*. ¶¶ 56-57.  However, although her panoramic sunroof was replaced, Ms. Lohr alleges her panoramic sunroof was replaced with an identically defective panoramic sunroof. *Id*. ¶ 58.  Ms. Lohr thus contends that Defendants have failed to correct the problem. *Id*.  Ms. Lohr indicates she paid a premium for her panoramic sunroof, and that she would not have leased her 2015 Nissan Rogue SV, or she would have paid less to lease the vehicle, had she been aware of the panoramic sunroof's defect. *Id*. ¶¶ 52, 60.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 2

Similar to Ms. Lohr's vehicle, the panoramic sunroof of Mr. Sindogi's 2012 Nissan Murano also shattered as Mr. Sindogi drove on the highway in April or May 2016. Dkt. #12 ¶ 65. Mr. Sindogis' family was in the vehicle at the time, and glass from the panoramic sunroof "rained down" on Mr. Sindogi, his wife, and his 8-year old daughter. *Id*. There was no indication that anything fell on Mr. Sindogi's vehicle, and Mr. Sindogi drove the damaged vehicle home. *Id*. ¶¶ 65-66. Because Mr. Sindogi's warranty had expired, repair of his panoramic sunroof was not covered by Defendants. *Id*. ¶¶ 67-74. However, Defendants' customer care center opened a case to determine why Mr. Sindogi's sunroof shattered. *Id*. ¶ 67. Mr. Sindogi also expended several hours to drive to the Nissan dealership where he purchased his vehicle. *Id*. ¶¶ 67-68. After diagnostic testing, the Nissan dealer "could not determine what caused the panoramic sunroof to shatter but opined that it was probably caused by something striking the sunroof, even though no object was seen, heard, or found at the time of the incident." *Id*. ¶ 69. Mr. Sindogi ultimately submitted a claim through his car insurance company and, after he paid a deductible, his panoramic sunroof was repaired. *Id*. ¶¶ 71-73. Mr. Sindogi claims that his panoramic sunroof was replaced with an identically defective panoramic sunroof. *Id*. ¶ 73. Following this repair, Mr. Sindogi, concerned about the vehicle's safety, eventually traded in his 2012 Nissan Murano for another vehicle. *Id*. ¶ 75.

Together, Ms. Lohr and Mr. Sindogi allege violations of Washington State's Consumer Protection Act, breach of express warranties, breach of the warranty of merchantability, and violations of the Magnusson-Moss Warranty Act ("MMWA") against Defendants. Dkt. #12 ¶¶ 90-147. Plaintiffs request relief in the form of actual damages, exemplary damages, restitution, disgorgement, rescission, and injunctive relief. *Id*. at 38-39. Plaintiffs seek to represent "[a]ll Washington State residents who purchased or leased in the State of Washington a model year

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 3

2008-2016 Rogue, Maxima, Sentra, Pathfinder or Altima, 2009-2016 Murano, or 2011-2016 Juke with a factory installed panoramic sunroof." *Id*. ¶ 77.

### III.     LEGAL STANDARD

To survive the contention that a complaint does not state a claim upon which relief can be granted, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Absent facial plausibility, Plaintiff's claims must be dismissed. *Id*. at 570.

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 4

## IV.  DISCUSSION

Nissan seeks to dismiss Plaintiffs' Amended Complaint on the following grounds: (1) Plaintiffs lack standing to pursue their claims; (2) Plaintiffs do not adequately plead their Washington State Consumer Protection Act claims; (3) Plaintiffs' request for injunctive relief is preempted; and (4) Plaintiffs do not plead viable warranty claims.  *See* Dkt. #22.  Each of Nissan's arguments is addressed in turn.

**A. Plaintiffs' Standing.**

A challenge based on lack of standing is appropriate under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Walsh v. Microsoft Corp.*, 63 F. Supp. 3d 1312, 1317-18 (W.D. Wash. 2014).  To demonstrate standing, Plaintiffs must establish three elements.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of establishing these elements.").  First, Plaintiffs must demonstrate they suffered an "injury in fact," which is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Id*. at 560 (internal citations and quotes omitted).  Next, "the injury has to be 'fairly . . . trace[able] to the challenged action,'" and it must be likely to be redressed by a favorable judicial decision.  *Id*. at 560-61.  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'"  *Id*. at 561 (quoting *National Wildlife Federation*, 497 U.S. 871, 889 (1990)).

Nissan poses three standing challenges to Plaintiffs' claims.  *See* Dkt. #22 at 10-14.  First, Nissan argues that Ms. Lohr does not have standing to bring her claims because she has

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 5

not suffered an actual injury. *Id*. at 10-11. To support this argument, Nissan contends Ms. Lohr has not suffered an economic injury because her car dealership repaired her shattered panoramic sunroof. *Id*. Nissan also argues that Ms. Lohr fails to present enough facts to support any claim that her replacement sunroof suffers from the same defect as the old one. *Id*. Nissan then argues that because Ms. Lohr pleads she will not lease another Nissan Rogue, and because Mr. Sindogi has sold his Nissan Murano and bought a Toyota Sienna, both Plaintiffs lack standing to pursue injunctive relief. *Id*. at 11-13. Finally, Nissan argues Plaintiffs lack standing to pursue claims related to Nissan vehicles they did not lease or purchase because Plaintiffs have not alleged sufficient facts to make it plausible that the panoramic sunroofs of vehicles not owned or leased by Plaintiffs are substantially similar in design and manufacture to Plaintiffs' vehicles' sunroofs. *Id*. at 13-14.

In response, Plaintiffs contend they have standing to pursue their claims because they have pled cognizable injuries. Dkt. #24 at 12. With respect to Mr. Sindogi, Plaintiffs point out that Nissan does not challenge whether Mr. Sindogi has pled a cognizable injury. *Id*. Consequently, because standing is satisfied if at least one named Plaintiff meets the requirements for standing, Plaintiffs argue they have standing. *Id*. (citing *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)). Plaintiff also argues that Ms. Lohr has pled a cognizable injury because she has alleged that she overpaid for a defective panoramic sunroof and she expended a significant amount of time and money fixing her shattered sunroof. *Id*. at 12-14. With respect to Nissan's injunctive relief argument, Plaintiffs argue that Ms. Lohr is threatened by a repetition of Nissan's refusal to adequately disclose and repair the defective panoramic sunroofs because Mr. Lohr's shattered sunroof was replaced with an equally defective sunroof which may also shatter. *Id*. at 14-15. Finally, Plaintiffs argue that whether

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 6

they can pursue claims related to models of Nissan vehicles they did not lease or purchase is best considered as part of the class certification analysis. *Id*. at 15-16. However, if the Court considers this issue, Plaintiffs argue they can pursue their claims because they allege the panoramic sunroofs in all of the claimed vehicles are substantially similar and suffer from a common defect. *Id*. at 16-18.

The Court addresses each of Nissan's arguments in turn.

  i. <u>Ms. Lohr Has Standing to Pursue her Claims</u>.

The Court agrees that Ms. Lohr pleads a cognizable injury and has standing to pursue her claims. Parties can establish standing if they allege that they did not receive the benefit of their bargain in purchasing a vehicle because of an alleged defect. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig*., 754 F. Supp. 2d 1145, 1164 (C.D. Cal. 2010) ("As long as plaintiffs allege a legally cognizable loss under the 'benefit of the bargain' or some other legal theory, they have standing."). Here, Ms. Lohr alleges a benefit of the bargain theory that is sufficient to find injury in fact. Ms. Lohr contends she paid a premium for the "luxury" upgrade of a panoramic sunroof which turned out to be defective. Had she known of this defect, Ms. Lohr contends she would have leased a different vehicle. Thus, to the extent Ms. Lohr paid more than she otherwise would have paid because of Nissan's failure to disclose the panoramic sunroof's defect, she has sufficiently plead an injury-in-fact. Aside from losing the benefit of her bargain, the time and money allegedly expended by Ms. Lohr to replace her shattered sunroof also constitutes an injury. That Ms. Lohr's panoramic sunroof was replaced does not alter this analysis because the panoramic sunroof was allegedly replaced with an equally defective sunroof. *See Kondash v. Kia Motors Am., Inc., et al.*, Case No. 1:15-cv-506, Dkt. #49 at 17 (S.D. Ohio filed June 24, 2016) (notwithstanding defendant's

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 7

replacement of shattered sunroof, plaintiff alleged cognizable injury where he alleged that replacement was equally faulty); *also Coe v. Philips Oral Healthcare Inc.*, 2014 WL 722501, at *4 (W.D. Wash. Feb. 24, 2014) (cognizable injury found where plaintiff alleged that manufacturer replaced defective product with another defective product); *Kearney v. Hyundai Motor Co.*, Case No. SACV 09-1298 DOC (MLGx), 2010 WL 9093204 (C.D. Cal. June 4, 2010) (complaint alleged injury in fact where replacement vehicle contained same defect as first vehicle). Nissan's motion to dismiss on this basis is DENIED.

    ii. <u>Plaintiffs May Pursue Injunctive Relief</u>.

  Plaintiffs also have standing to pursue injunctive relief. Where parties seek injunctive relief, they must demonstrate they are "'realistically threatened by *repetition* of [the violation.]" *Armstrong v. Davis*, 275 F.3d 849, 860-61 (9th Cir. 2001) (alteration in original) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 109 (1983)). Because Ms. Lohr pleads that she will not lease another Nissan Rogue, and because Mr. Sindogi has sold his Nissan Murano and bought a Toyota Sienna, Nissan reasons that Plaintiffs lack standing to pursue injunctive relief because they cannot show they are threatened by repetition of the act they seek to enjoin. Dkt. #22 at 11-13. The Court does not agree. Here, Ms. Lohr alleges she continues to suffer the threat of harm caused by Nissan's failure to disclose and correct the defect in their panoramic sunroofs because her shattered sunroof was replaced with an equally defective panoramic sunroof. Her claimed threat of injury is thus likely to be redressed by injunctive relief that requires Nissan to disclose and repair the panoramic sunroof defects. Accordingly, Nissan's motion to dismiss on this basis is DENIED.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 8

    iii. <u>Plaintiffs Have Standing to Pursue Claims Related to Class Vehicles Not Leased or Purchased.</u>

Plaintiffs also have standing to pursue claims related to vehicles they did not lease or purchase. If plaintiffs plead "sufficient similarity" between the vehicle models they purchased and leased and the vehicle models they do not own or lease, their class claims can encompass those models. *E.g.*, *Glenn v. Hyundai Motor Am.*, Case No. SA CV 15-2052-DOC (KESx), 2016 WL 3621280, at *16 ("In light of *Gratz*, this Court is persuaded a named plaintiff may assert class claims regarding vehicle models she has not purchased if she adequately pleads 'sufficient similarity' between the vehicle models purchased and those models not purchased."). Here, Plaintiffs seek to represent the following Nissan models: 2008-2016 Rogue, Maxima, Sentra, Pathfinder or Altima, 2009-2016 Murano, or 2011-2016 Juke (collectively the "Class Vehicles"). Plaintiffs allege the Class Vehicles contain a common defect: all of the panoramic sunroofs were made with tempered or laminated glass, the glass is coated with ceramic paint, the tempered glass was thinned to improve fuel efficiency, the ceramic paint applied to the glass prior to tempering weakens the structure of the panoramic sunroof, and the fastening of the sunroofs to the vehicle also weakens the panoramic sunroof. Dkt. #12 ¶¶ 13, 14, 16, 18-20, 24-25. Aside from alleging these defects, Plaintiffs also include complaints from owners of Rogue, Altima, Maxima, Sentra, Pathfinder, and Juke Nissan models who have also experienced the same shattering of their panoramic sunroofs. *Id*. ¶ 26. Together, Plaintiffs' assertion of a common defect and complaints from drivers of vehicle models Plaintiffs seeks to represent, these assertions allege a "sufficient similarity" between Plaintiffs' vehicles and the vehicle models they seek to represent. Nissan's motion to dismiss for lack of standing on this basis is DENIED.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 9

**B. Plaintiffs' Consumer Protection Act Claims.**

Nissan next argues that Plaintiffs' Consumer Protection Act claims must be dismissed because they do not meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Dkt. #22 at 14- 18. Unlike Rule 8(a)(2), which requires that claims for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Rule 9(b) requires "fraud or mistake" claims to "state with particularity the circumstances constituting fraud or mistake." In response, Plaintiffs assert that Rule 8(a)(2), not Rule 9(b), provides the proper pleading standard for claims brought under Washington's Consumer Protection Act. Dkt. #22 at 18-19. However, in the event Rule 9(b) applies, Plaintiffs argue their Amended Complaint meets the requisite pleading standard. *Id.* The Court agrees with Plaintiffs.

The heightened pleading standard imposed by Rule 9(b) does not apply to Plaintiffs' claims. The Rule 9(b) pleading standard applies where a claim specifically alleges fraud or alleges facts "that necessarily constitute fraud (even if the word 'fraud' is not used)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). This may be the case where a plaintiff's claim is "grounded in fraud" or "sound[s] in fraud." *Id*. at 1103-04. Claims "sound in fraud" where plaintiffs "allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of claim," *id*., as well as where an intent to deceive is alleged. *Vernon v. Qwest Commc'ns Int'l, Inc.*, 643 F. Supp. 2d 1256, 1264-65 (W.D. Wash. 2009). Here, Plaintiffs' Amended Complaint does not specifically allege fraud, nor does it allege facts that constitute fraud. Plaintiffs' Amended Complaint alleges Nissan knows its panoramic sunroofs have a propensity to shatter, that Nissan fails to disclose this defect, and that Nissan systematically denies coverage for the repair of the defective panoramic sunroofs. While these

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 10

allegations indicate Nissan's acts and practices are capable of deceiving the public, there is no effort by Plaintiff to allege common law fraud elements, nor are there allegations that Nissan intended to deceive Plaintiffs. Absent allegations that constitute "averment of fraud," the Court cannot recast Plaintiffs' Amended Complaint as one alleging fraud. Consequently, the Court finds that Rule 9(b) does not apply to Plaintiffs' CPA claims, and Nissan's motion to dismiss Plaintiffs' CPA claims on this basis is DENIED.

**C. Plaintiffs' Request for Injunctive Relief.**

Aside from challenging Plaintiffs' standing to request injunctive relief, Nissan raises two additional bases for disallowing injunctive relief. First, Nissan argues Plaintiffs' request for injunctive relief is conflict preempted because it is "tantamount to a request for a recall" and "would undermine and conflict with the comprehensive federal scheme set forth in the National Traffic and Motor Vehicle Safety Act." Dkts. #22 at 18 and #28 at 10-11. Nissan then argues the Court should defer to the National Highway Traffic Safety Administration's ("NHTSA") regulatory authority and dismiss Plaintiffs' request for injunctive relief on primary jurisdiction grounds. The Court addresses each of these arguments in turn.

    i.    <u>Conflict Preemption</u>.

Conflict preemption exists when state law conflicts with federal law, or "if federal law so thoroughly occupies a legislative field that it is unreasonable to infer that Congress intended for supplemental state or local regulation." *Atay v. Cty. Of Maui*, 842 F.3d 688, 699 (9th Cir. 2016). Thus, where a private party cannot comply with both state and federal law, or where state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,'" conflict preemption exists. *Id.* (quoting *Crosby v. Nat'l Foreign*

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 11

*Trade Council*, 530 U.S. 363, 372-73 (2000)). A "presumption against preemption" applies where a statute regulates an area traditionally occupied by the states. *Id.*

Plaintiffs' request for injunctive relief is not preempted by the National Traffic and Motor Vehicle Safety Act ("Safety Act"). As an initial matter, the "presumption against preemption" applies to Plaintiffs' state-law claims. *See, e.g.*, *In re Toyota*, 754 F. Supp. 2d at 1196 ("Motor vehicle safety is an area of law traditionally regulated by the states."). Consequently, Nissan must show it is Congress' "clear and manifest" intent to preempt State law. *Chamberlan v. Ford Motor Co.*, 314 F. Supp. 2d 953, 962 (N.D. Cal. 2004). Aside from conclusorily stating that Plaintiffs' request for injunctive relief is conflict preempted by the NHTSA, Nissan makes little attempt to explain how the Safety Act preempts Plaintiffs' injunctive relief request. Nissan merely asserts that if a recall is needed, Plaintiffs' claims "usurp the technical and regulatory expertise of NHTSA to determine what this remedy should be." This unexplained conclusion does not convince the Court. As noted by other courts within the Ninth Circuit, the "primary congressional objective behind the [Safety Act] is safety." *Id.* at 963. How Plaintiffs' request for injunctive relief conflicts with this Congressional objective is lost on the Court. Nissan's request to dismiss Plaintiffs' request for injunctive relief on this ground is DENIED.

   ii. <u>Primary Jurisdiction</u>.

Nissan also fails to convince the Court it should dismiss Plaintiffs' request for injunctive relief on primary jurisdiction grounds. The primary jurisdiction doctrine may apply where the court finds "an administrative agency has 'primary jurisdiction' over a judicially cognizable claim where 'enforcement of the claim requires the resolution of issues, which, under a regulatory scheme, have been placed within the special competence of an administrative body.'"

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 12

*In re Toyota*, 754 F. Supp. 2d at 1199 (internal citations omitted). However, where defendants do not show an actual conflict between a plaintiff's claims and an investigation by the NHTSA, courts within the Ninth Circuit have declined to apply the primary jurisdiction doctrine. *Id*. at 1199-1200. The same is true where a plaintiff's claims arise under state law. *See id*. at 1200 (primary jurisdiction not applied where plaintiffs' claims based on California statutes). Here, Nissan fails to demonstrate an actual conflict exists between Plaintiffs' claims and an investigation by the NHTSA. Nissan merely points to Plaintiffs' allegation that the NHTSA has requested information from Nissan. This does not evidence an actual conflict. Additionally, the Court notes that Plaintiffs' claims arise under state law, and are thus "'within the conventional competence of the courts.'" *Id*. at 1200 (quoting *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303-04 (1976)). Nissan's request to dismiss Plaintiffs' request for injunctive relief on this ground is accordingly DENIED.

**D. Plaintiffs' Breach of Warranty Claims.**

Nissan next seeks dismissal of Plaintiffs' breach of warranty claims. Plaintiffs' Amended Complaint claims a breach of express warranty, breach of warranty of merchantability, and violations of the Magnuson-Moss Warranty Act. Dkt. #12 ¶¶ 110-147. The Court addresses each of these warranty claims in turn.

    i.    <u>Plaintiffs' Breach of Express Warranty Claims</u>.

Nissan argues that Plaintiffs' express warranty claims must be dismissed because Plaintiffs plead that Nissan complied with Ms. Lohr's express warranty by replacing her panoramic sunroof, and that Mr. Sindogi's panoramic sunroof shattered after the vehicle was outside the warranty period. Dkt. #22 at 19. In response, Plaintiffs argue that Nissan's repair of Ms. Lohr's panoramic sunroof does not make dismissal of their express warranty claims proper

because Nissan replaced Ms. Lohr's panoramic sunroof with an equally defective sunroof. Dkt. #24 at 26-27. Plaintiffs also argue that their breach of express warranty claim cannot be dismissed because they have alleged that the durational limits of Nissan's express warranty are unconscionable. *Id*. The Court agrees with Plaintiffs.

Plaintiffs adequately plead breach of express warranty claims. Under Washington State law, a limited repair warranty is deemed ineffective and fails of its essential purpose if the breaching manufacturer is unable to repair a purported defect within a reasonable time. *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 707-08 (9th Cir. 1990). Here, Nissan's New Vehicle Limited Warranty purports to cover "any repairs needed to correct defects in materials or workmanship of all parts and components of each new Nissan vehicle supplies by Nissan subject to the exclusions listed under the heading 'WHAT IS NOT COVERED[.]'" Dkt. #25, Ex. A at 11.[1] Glass breakage caused by a defect in material or workmanship is covered under this limited warranty. *Id*. at 12. Plaintiffs contend that, notwithstanding the replacement of Ms. Lohr's panoramic sunroof, Nissan breached its New Vehicle Limited Warranty because Ms. Lohr's panoramic sunroof has been replaced with an equally defective panoramic sunroof. As such, Plaintiffs contend that Nissan continues to breach this express warranty. At this stage in the proceedings, the Court accepts these allegations as true, and finds that Plaintiffs adequately plead breach of express warranty claims.

Plaintiffs' assertions about the durational limits of Nissan's limited warranty also sufficiently allege breach of express warranty claims. Generally, express warranties do not

---

[1] Plaintiffs and Nissan both request judicial notice of Nissan Warranty Information Booklets. Dkts. #23 and #25. Because Plaintiffs' Amended Complaint incorporates these manuals by reference, the Court will take judicial notice of these booklets. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.*, 826 F. Supp. 2d 1180, 1187 (C.D. Cal. 2011) ("[C]ourts may take judicial notice of documents incorporated by reference in the operative complaint.").

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 14

cover repairs made after the applicable time or mileage periods elapse. *See, e.g.*, *Clemens v. DaimlerChrysler*, 534 F.3d 1017, 1022 (9th Cir. 2008). However, Washington State law allows plaintiffs to raise claims of unconscionability with respect to the terms in a contract. RCW 62A.2-302. Here, Plaintiff has alleged that Nissan knew or should have known that the Class Vehicles were defective at the time they were sold "and would fail well before the end of their useful lives." Dkt. #12 ¶ 118. Plaintiffs also allege that Plaintiffs and the purported class members "had no meaningful choice in determining these time limitations," and that those time limitations "unreasonably favored Nissan." *Id*. Finally, Plaintiffs allege that a "gross disparity in bargaining power exists between Nissan and the class members . . . ." *Id*. At this stage in the proceedings, the Court finds Plaintiffs have sufficiently pled unconscionability to state a claim for Nissan's alleged breach of its express warranty. *See Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 621-23 (M.D.N.C. 2006) (finding allegations that defendants knew of latent defects during sale, and that purchasers had no choice regarding express warranty terms due to unequal bargaining power, sufficient to survive motion to dismiss).

    ii. <u>Plaintiffs' Breach of Warranty of Merchantability Claims</u>.

  Nissan next argues Plaintiffs have not adequately pled their implied warranty of merchantability claims because Plaintiffs fail to show they have contractual privity with Nissan. *Id*. at 19-20. Nissan argues that "Plaintiffs attempt to evade the privity requirement by concluding they had 'direct dealings with Nissan' and are 'third-party beneficiaries of contracts between Nissan and its dealers,' but "there are no factual allegations in the [Amended Complaint] to support these conclusions." *Id*. In response, Plaintiffs argue they have pled sufficient facts to support they are third-party beneficiaries of contracts between Nissan and dealers Plaintiffs had direct contact with. Dkt. #24 at 27-28. The Court agrees with Nissan.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 15

Under Washington State law, "lack of privity has historically been a defense to claims of breach of warranty." *Tex. Enters., Inc. v. Brockway Standard, Inc.*, 66 P.3d 625, 627-28 (Wash. 2003). Consequently, to bring implied warranty claims, plaintiffs must establish contractual privity. *Id*. at 628 (citing *Baughn v. Honda Motor Co.*, 727 P.2d 655 (Wash. 1986)). Generally, "vertical non-privity plaintiffs," those plaintiffs who did not buy the product directly from a named defendant, cannot recover from remote manufacturers for the breach of implied warranties. *Id*. However, an exception to the privity requirement exists for implied warranties where plaintiffs are the intended third-party beneficiaries of an underlying contract between a manufacturer and intermediate dealer. *Id*. at 630. Plaintiffs can demonstrate they are third-party beneficiaries where a manufacturer knew a purchaser's identity, knew the purchaser's purpose for purchasing the manufacturer's product, knew a purchaser's requirements for the product, delivered the product, and/or attempted repairs of the product in question. *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.*, 831 P.2d 724 (Wash. 1992). Washington courts consider these factors in a "sum of the interaction" test, to "determine whether the manufacturer was sufficiently involved in the transaction (including post-sale) with the remote purchaser to warrant enforcement of an implied warranty." *Babb v. Regal Marine Indus., Inc.*, 2015 WL 786857, at *3, 186 Wash. App. 1003 (Wash. App. Feb. 24, 2015).

Plaintiffs fail to adequately allege they are the intended third-party beneficiaries of implied warranties Nissan made to the dealerships where Plaintiffs purchased or leased their vehicles. Because Plaintiffs did not purchase or lease their vehicles directly from Nissan, they are "vertical non-privity plaintiffs." *See Tex. Enters.,* 66 P.3d at 628 ("The vertical non-privity plaintiff is a buyer who is in the distributive chain, but who did not buy the product directly from the defendant.") (internal quotes and citations omitted). As such, Plaintiffs must allege

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 16

"sufficient factual matter" to allow the Court to draw the reasonable inference that they are indeed third-party beneficiaries of the implied warranties Nissan allegedly made to the dealers who sold Nissan vehicles. Here, Plaintiffs plead they are "third-party beneficiaries of contracts between Nissan and its dealers." Dkt. #12 ¶ 124(b). However, Plaintiffs do not support this allegation with facts about their direct interactions with Nissan. Instead, Plaintiffs allege facts about their interactions with authorized Nissan dealerships. *Id.* ¶¶ 50, 56-58, 61, 67-70. Plaintiffs only allege one interaction, by Mr. Sindogi, with Nissan's customer care center. *Id.* ¶ 67. These facts do not allow the Court to draw the reasonable inference that Plaintiffs may be third-party beneficiaries of Nissan's implied warranties. Because Plaintiffs' claims for Nissan's alleged breach of the warranty of merchantability fail to state a claim for which relief can be granted, the Court GRANTS Nissan's motion to dismiss these claims without prejudice.

        iii.    <u>Plaintiffs' Magnuson-Moss Warranty Act Claims</u>.

Finally, Nissan argues Plaintiffs' Magnuson-Moss Warranty Act ("MMWA") claims must be dismissed for three reasons. First, to the extent Plaintiffs have not alleged valid state-law breach of warranty claims, Nissan argues Plaintiffs' MMWA claims, which require a valid warranty claim under state law, must be dismissed. *Id.* at 21 (citing *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n.2 (9th Cir. 2009) ("because we conclude that the plaintiffs have failed to state a claim for breach of an express or implied warranty, their claims under [MMWA] are also properly dismissed")). Nissan further argues that Plaintiffs have failed to satisfy MMWA's exhaustion requirements because Plaintiffs did not take advantage of Nissan's informal dispute settlement mechanisms. *Id.* at 20-21. Finally, Nissan argues Plaintiffs are barred from bringing claims on warranties not governed by Section 2310(a)(3) of the MMWA because they have not

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 17

complied with the pre-suit notice requirements set out in Section 2310(e) of the MMWA. Dkt. #22 at 20-22. Nissan fails to persuade the Court.

Because Plaintiffs plead a valid state-law breach of express warranty claim, dismissal of Plaintiffs' MMWA express warranty claims on this ground is improper. *See Toyota*, 754 F. Supp. 2d at 1188 ("[T]o the extent Plaintiffs have stated express and implied warranty claims, they have also stated claims under the MM[W]A."). However, to the extent Plaintiffs plead implied warranty claims under the MMWA, the Court GRANTS Nissan's motion to dismiss those claims because Plaintiffs do not adequately plead their state-law implied warranty claims.

Nissan's exhaustion requirement argument is unconvincing because failure to participate in an informal dispute process is an affirmative defense which Plaintiffs need not anticipate in their complaint. *See Glenn*, 2016 WL 3621280 at *14 (finding that issue of exhaustion is an anticipated defense that plaintiffs need not negate in their complaint) (citing *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1235 (S.D. Fla. 2014)); *also Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1040 (9th Cir. 2011) ("[S]tatutorily created exhaustion requirements ordinarily constitute prudential affirmative defenses that may be defeated by compelling reasons for failure to exhaust.").

Nissan's pre-suit notice requirement argument also fails because Section 2310(e) of the MMWA allows purported class-action plaintiffs to bring suit, for the limited purpose of determining the representative capacity of those named plaintiffs, without first notifying defendants. *See* 15 U.S.C. § 2310(e) ("a class of consumers may not proceed in a class action under such subsection [(d)] with respect to such a failure *except to the extent the court determines necessary to establish the representative capacity of the named plaintiffs . . . .*") (emphasis added). Once the Court determines the representative capacity of plaintiffs, plaintiffs

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 18

must then provide defendants notice of the suit and a reasonable opportunity to cure the alleged warranty breach. *Id*. ("In the case of such a class action (other than a class action respecting a warranty to which subsection (a)(3) of this section applies) brought under subsection (d) of this section . . . such reasonable opportunity will be afforded by the named plaintiffs and they shall at that time notify the defendant that they are acting on behalf of the class."). Because the plain language of Section 2310(e) does not require Plaintiffs to provide Nissan with pre-suit notice of their intent to act on behalf of a class, dismissal of Plaintiffs' MMWA claims is not warranted at this stage in the litigation. The Court thus DENIES Nissan's motion to dismiss Plaintiffs' express warranty MMWA claims.

## V. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby GRANTS IN PART and DENIES IN PART Defendant Nissan's Motion to Dismiss (Dkt. #22). The Court takes the following action with respect to each of Nissan's arguments:

1) Nissan's motion to dismiss Ms. Lohr's claims on the basis that she lacks standing is DENIED;

2) Nissan's motion to dismiss Plaintiffs' claims on the basis that Plaintiffs lack standing to pursue injunctive relief is DENIED;

3) Nissan's motion to dismiss Plaintiffs' claims on the basis that Plaintiffs lack standing to pursue claims related to vehicles they did not lease or purchase is DENIED;

4) Nissan's motion to dismiss Plaintiffs' Consumer Protection Act claims on the basis that those claims are not adequately pled is DENIED;

5) Nissan's motion to dismiss Plaintiffs' request for injunctive relief on conflict preemption and primary jurisdiction grounds is DENIED;

6) Nissan's motion to dismiss Plaintiffs' state-law breach of express warranty claims is DENIED;

7) Nissan's motion to dismiss Plaintiffs' state-law breach of warranty of merchantability claims is GRANTED without prejudice;

8) Nissan's motion to dismiss Plaintiffs' MMWA claims that are based on Nissan's alleged breach of state-law express warranty claims is DENIED; and

9) Nissan's motion to dismiss Plaintiffs' MMWA claims that are based on Nissan's alleged breach of state-law implied warranty claims is GRANTED without prejudice.

DATED this 17th day of March 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE