1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TAMARA LOHR and RAVIKIRAN SINDOGI, on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

NISSAN NORTH AMERICA, INC., and NISSAN MOTOR CO., LTD.,

      Defendants.

Case No. C16-1023RSM

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

## I.     INTRODUCTION

This putative class action comes before the Court on Defendants Nissan North America, Inc. and Nissan Motor Co., LTD ("Nissan")'s Motion for Summary Judgment. Dkt #193. Nissan moves to dismiss all of Plaintiffs' claims as a matter of law, with particular focus on Plaintiffs' CPA claims. Plaintiffs oppose. Dkt. #197. The Court has determined that it can rule without oral argument. For the following reasons, the Court GRANTS Nissan's Motion.

## II.     BACKGROUND

This case is about exploding panoramic sunroofs. Plaintiff Tamara Lohr filed her original complaint in state court nearly six years ago, on May 25, 2016. Dkt. #1-1 at 3-30. There were two causes of action under Washington State's Consumer Protection Act, RCW 19.86 *et seq.*, ("CPA"). *See id.* After removal, Nissan filed a Motion to Dismiss. Dkt. #11. Plaintiff Lohr amended her Complaint. Dkt. #12 ("FAC"). The Amended Complaint added Plaintiff Ravikiran Sindogi and causes of action for breach of express warranty, breach of the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

warranty of merchantability under RCW 62A *et seq.*, and violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. *See* Dkt. #12. An Amended Motion to Certify Class remains pending before the Court. Dkt. #94.

Plaintiff Lohr leased a new 2015 Nissan Rogue with a panoramic sunroof on August 22, 2015. FAC ¶¶ 48-49. Her car came with a 36-month/36,000-mile limited warranty. *See* FAC ¶ 44. On January 13, 2016, her panoramic sunroof ("PSR") "shattered" without warning while she was driving. FAC ¶ 54. A Nissan dealership replaced the sunroof. FAC ¶ 57.

Plaintiff Sindogi purchased a new 2012 Nissan Murano in February 2013. FAC ¶ 61. He was provided with a 36-month/36,000-mile limited warranty. FAC ¶¶ 44, 62. In April or May of 2016, after the warranty expired, the panoramic sunroof of his Murano shattered while driving. FAC ¶¶ 65, 67. Glass from the panoramic sunroof rained down on Mr. Sindogi, his wife in the passenger seat, and his daughter in the backseat. *Id.*

Plaintiffs seek to represent "[a]ll Washington state residents who purchased or leased in the State of Washington a model year 2008-2016 Rogue, Maxima, Sentra, Pathfinder or Altima, 2009-2016 Murano, or 2011-2016 Juke with a factory installed panoramic sunroof." FAC ¶ 77.

One issue raised by Nissan is the difference between an external and internal cause for the shattering events in Plaintiffs' vehicles. Plaintiffs plead that the shattering events occurred without any indication of something falling on the sunroof. FAC at ¶ 55 and ¶ 66. The FAC states "[r]ocks or other objects thrown up by cars and trucks on the roadway would not impact the sunroof with sufficient force to cause it to shatter, let alone to shatter outward, a fact Nissan is aware of." FAC at ¶ 32. The FAC pleads that the shattering is instead caused by an internal defect, known to Nissan. Essentially, Plaintiffs plead that these panoramic sunroofs use glass that is tempered instead of laminated, too thin, covered in ceramic paint that weakens the glass,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

and attached to the car with too much tension.  *See* FAC at ¶¶ 11–25.  Nissan argues in briefing that Plaintiffs have now abandoned these theories of what caused the shattering, citing Plaintiffs' expert reports and depositions.  *See* Dkt. #193 at 6.  This issue is further discussed below, although as the parties will see it is ultimately irrelevant for the Court's ruling.

Another issue raised by Nissan are the damages suffered by the two named Plaintiffs, who now argue only that they "were injured at the point of sale," *i.e.* they would have paid less if they had known of the defect.  Dkt. #197 at 26.  No evidence is submitted as to this injury; instead, Plaintiffs say such evidence will come from a forthcoming survey of the proposed class. Plaintiffs point to no evidence of Lohr's or Sindogi's medical or other out-of-pocket expenses. Plaintiff Lohr's PSR was repaired for free, she had no out-of-pocket expenses, and she claims no amount for "loss of use" during the lease.  Dkt. #193-5 ("Lohr Dep.") at 186:1–7; 246:10– 16, 21–23.  Plaintiff Sindogi pled that he had to pay some amount of money to repair his sunroof, *see* FAC at ¶73, but this is not discussed in responsive briefing.  Plaintiff Sindogi eventually traded in his vehicle and has conceded in deposition testimony that the trade-in value was not reduced because of the alleged defect.  Dkt. #193-7 ("Sindogi Dep.") at 193:2–194:20. He did not tell the buyer about the alleged defect, but testified the value would have been the same even if he had.  *Id.* at 193:2–5, 194:17–20.

### III.    DISCUSSION

#### A.  Legal Standard for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Material facts are those which might affect the outcome of the suit under governing law.  *Anderson*, 477 U.S. at

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 3

248.  In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004).  The Court must draw all reasonable inferences in favor of the non-moving party.  *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994).  However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B.  Analysis**

### 1.  Whether CPA Claims are Barred by a "Safe Harbor" Provision

Nissan first argues:

> The CPA does not apply to "actions or transactions permitted by any ... regulatory body or officer acting under statutory authority of this state or of the United States...." RCW 19.86.170. The mere fact of regulation is not sufficient, but express permission exempts an action from the CPA. *Vogt v. Seattle-First Nat'l Bank*, 817 P.2d 1364, 1370 (Wash. 1991). Plaintiffs contend Nissan's PSRs are "defective" and unsafe because Nissan uses tempered glass. Because using tempered glass is expressly permitted by federal safety regulations, neither its use nor a failure to disclose that use can support a CPA claim.

Dkt. #193 at 17.  Nissan points to an automobile glass safety regulation promulgated by the National Highway Traffic Safety Administration ("NHTSA").  *Id.* at 18 (citing FMVSS 205, "requiring 'glazing materials for use in motor vehicles' to conform to a particular engineering standard," namely ANSI/SAE Z26.1–1996, which "expressly permits manufacturers to use

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 4

1
2
3

either tempered glass or laminated glass."). In response, Plaintiffs say their claim is not that Nissan violated the CPA by simply using tempered glass, but in how that glass was applied to the sunroofs as designed for the vehicles in question. *See* Dkt. #197 at 14–15.

4
5
6
7
8
9
10
11
12
13
14

"Washington courts have long interpreted [RCW] 19.86.170 to shield only conduct [that is] affirmatively authorized by the agency." *Blaylock v. First Am. Title Ins. Co.*, 504 F. Supp. 2d 1091, 1104-05 (W.D. Wash. 2007) (collecting cases). "An act or transaction is not exempt merely because it is regulated generally, or merely because a regulating agency acquiesces in it." *Edmonds v. John L. Scott Real Estate, Inc.*, 87 Wn. App. 834, 844 (Wash. Ct. App. 1997) (internal citations omitted).  Rather, the agency must take "overt affirmative actions specifically to permit the actions or transactions engaged in by the person or entity involved in a Consumer Protection Act complaint."  *Id.* (quoting *Vogt v. Seattle-First Nat'l Bank*, 117 Wn.2d 541, 552 (1991)).

15
16
17
18

The Court finds that the "safe harbor" provision cited by Nissan does not preclude Plaintiffs' more nuanced claim that Nissan violated the CPA in how the tempered glass was applied to the vehicles in question.  This is not a valid basis for dismissal of the CPA claim.

19

### 2.   CPA Claim – Unfair or Deceptive Act or Practice Element

20
21
22
23
24
25
26
27
28

To prevail on their CPA claims, Plaintiffs must prove: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation. *Ambach v. French*, 216 P.3d 405, 407 (Wash. 2009); *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 889 (Wash. 2009).   Whether an act is "deceptive" is a question of law for the court. *Panag*, 204 P.3d at 894. Where the alleged "act" is a failure to disclose, the plaintiff must prove the omitted fact was material. *Young v. Toyota Motor Sales USA*, 472 P.3d 990, 995 (Wash. 2020).

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 5

Plaintiffs claim Nissan acted deceptively by failing to disclose a defect.  FAC ¶ 2.  This is also the basis for their "unfair act" claim.  *See, e.g., id.* at ¶ 93.

Nissan contends Plaintiffs have failed to make a sufficient showing of an unfair or deceptive act.  First, Nissan tries to pin down exactly what Plaintiffs will claim at trial is defective with the panoramic sunroofs.  Nissan states:

> Plaintiffs have conceded PSRs do not shatter "spontaneously" in the sense the FAC uses that term, meaning "with no external cause." *See, e.g.*, FAC ¶¶ 19– 25 (alleging design defect weakens glass so that ordinary driving conditions can cause it to shatter "spontaneously"). They now say there must be an external cause: either an impact forceful enough to cause the glass to shatter immediately, or an impact causing some lesser damage that may gradually "propagate" through the glass and cause it to shatter later. *See* Pls.' Mot. for Class Cert. at 1, Reply at 7; Read Dep. at 44:21–47:24, 188:6–190:11.

Dkt. #193 at 21.  Plaintiffs begrudgingly consent to the gist of this characterization.  *See* Dkt. #197 at 17 ("Plaintiffs never equated 'spontaneously' to mean 'with no external cause'"); and at 18 ("…the PSR shattering is 'spontaneous' because the reason for the failure is not *apparent* to the user and occurs without warning…. Nissan's own expert, Dr. Verghese, explains that once a progressive crack enters the tensile layer, the PSR shatters so rapidly—in milliseconds, with the crack traveling throughout the glass at over 1,000 miles per hour—that it appears to an unsuspecting occupant that the PSR shatters, essentially, spontaneously.")

Of course, a design that is susceptible to sudden shattering minutes, hours, or days after some lesser damage incurred through ordinary driving conditions could still be considered a defect by the average consumer.  Impact with a small object on the roof is relatively commonplace for highway drivers; total failure of a panoramic sunroof well after that impact is surprising and clearly undesirable.  What Plaintiffs are alleging is not, as Nissan characterizes, "glass may break if struck by some external object" or "stone chipping."  *See* Dkt. #193 at 21.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The change in what Plaintiffs are claiming caused the shattering, or how it occurred, is not fatal to their CPA claim.

However, Nissan also argues Plaintiffs have failed to demonstrate Nissan's knowledge of the defect prior to when they received their vehicles in 2013 and 2015.  Dkt. #193 at 26 (citing, *inter alia*, *Hiner v. Bridgestone/Firestone, Inc.*, 959 P.2d 1158, 1162–63 (Wash. App. 1998) ("Failure to warn of inherent dangers in the use of a product is not a deceptive or unfair act unless the manufacturer knows of the dangers" and fails to reveal them), *rev'd on other grounds*, 978 P.2d 505 (Wash. 1999)).

In their Response, Plaintiffs barely address this point.  They state "there is a genuine issue of fact regarding whether Nissan knew of the Defect from the first year the PSRs were offered to consumers."  Dkt. #197 at 23.  Plaintiffs then state "[t]he evidence shows that Nissan received complaints relating to the Defect as early as 2008 and was aware of the Defect when it responded to NHTSA's inquiry. ECF Nos. 108-1, 108-19 through 108-20."  *Id*. at 24.  Plaintiffs do not elaborate or direct the Court's attention to any portion of these cited exhibits.

On Reply, Nissan summarizes the situation thusly:

> ECF 108-19 and 108-20 contain information about class vehicle sales. Plaintiffs do not explain how this shows Nissan's knowledge of "the Defect." ECF 108-1 is Nissan's response to NHTSA's inquiry. But that was sent in June 2016—well after both Plaintiffs' transactions. The letter refers to earlier allegations or reports at various times that a PSR had broken, but Plaintiffs make no effort to explain how these reports meet their burden. Knowledge that some consumers complained is not enough to show a manufacturer knew of a material safety defect at the time of the plaintiff's purchase. *Wilson v. Hewlett Packard Co.*, 668 F.3d 1136, 1147–48 (9th Cir. 2012). A detailed analysis of such complaints along with supporting facts may be enough at the pleading stage. *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1026–27 (9th Cir. 2017); *see id*. at 1028 (noting importance of fact that Yamaha had "filed a motion to dismiss, not a motion for summary judgment."). A single

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 7

offhand reference to the mere fact of complaints, with no analysis whatsoever, cannot meet Plaintiffs' burden here.

DKt. #207 at 14.

The Court has reviewed these three cited exhibits, the content of which can be found under seal at Dkts. #90-1, #90-18, and #90-19, and agrees with Nissan.  At best, these exhibits show that there were other PSR incidents involving vehicles that were manufactured prior to 2013 or 2015, but not when that incident occurred or what was reported to Nissan.  It is not the Court's responsibility to connect the dots here, or comb through other exhibits attached to other Motions to make Plaintiffs' case.  Plaintiffs fail to make a sufficient showing that Nissan knew of the defect prior to the leasing and sale of Plaintiffs' vehicles.  Plaintiffs have failed to set forth sufficient evidence to support their claim of an unfair or deceptive act by demonstrating that Nissan knew of and failed to disclose a potential defect in their panoramic sunroofs. Dismissal of this claim is therefore warranted.  *See Celotex, supra*.

### 3.  CPA Claim – Injury

Nissan also argues that Plaintiffs have failed to demonstrate injury under the CPA.  In Washington, a plaintiff must present "some rational basis" for his or her damages. *O'Brien v. Larson*, 11 Wn. App. 52, 54 (Wash. Ct. App. 1974).  "The precise amount need not be shown with mathematical certainty." *Olympia Oyster Co. v. Rayonier Inc.*, 229 F. Supp. 855, 861 (W.D. Wash. 1964). Under the CPA, damages "must be broadly construed;" even "minimal injury" is sufficient to meet the damages element; damages are established if the "consumer's property interest or money is diminished because of the unlawful conduct even if the expenses are minimal." *Harvey v. Centene Mgmt. Co. LLC*, 357 F. Supp. 3d 1073, 1081 (E.D. Wash. 2018) (internal citations and quotations omitted).  Nonquantifiable injuries such as loss of use of property will suffice. *Id.*

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 8

Plaintiffs intend to show injury "at the point of sale."  Dkt. #197 at 26 ("Plaintiffs contend that they and class members would not have purchased or leased their Nissan vehicles had they known about the PSR Defect, or they would have paid less if they had known about it.").  But Plaintiffs present no evidence of this injury.  It is for the Plaintiffs to demonstrate at this stage in litigation that they suffered some damages—it is circular logic to say they suffered injury because they overpaid for their vehicles where the cost failed to include the risk of injury—that injury being the risk of overpaying.  Plaintiffs must demonstrate some injury to bring a CPA claim.

"Plaintiffs' experts will measure class members' damages by calculating the amount they overpaid for Class Vehicles—that is, the difference in market value between the defective vehicles as purchased and the non-defective vehicles they believed they were receiving (and were entitled to receive)." *Id.* at 27.  Well, this evidence has not been created yet, so the Court cannot consider it.  The Court is essentially left with just Plaintiffs' word that their experts will conclude that Plaintiffs overpaid after conducting a classwide survey.  Not only is this speculative, Nissan was able to get Plaintiffs' expert stating on the record that the survey could conclude Plaintiffs did not overpay for their vehicles.  *See* Dkt. #193-19 ("Weir Dep."), 93:11–24.  Meanwhile, Nissan submits evidence from its expert witness who examined market data and found no evidence of a price differential due to the alleged defect.  *See* Dkt. #193-20 at ¶¶ 14–15, 45–48.  Plaintiffs do not discuss this evidence.  Plaintiffs conclude their briefing with, "[t]hat the survey and conjoint analysis have not yet been performed is not a basis for granting summary judgement." Dkt. #197 at 28.  There is no citation to support this assertion.  While it may be true that Plaintiffs do not need to establish class-wide damage prior to the certification of the class, Plaintiffs are responding now to a motion to dismiss *their* claims.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 9

Bizarrely, Plaintiffs have not submitted evidence of more traditional forms of injury. There are no medical bills.  Plaintiffs apparently had no repair expenses, or they were fully compensated.  While it seems as if these incidents should have caused loss of use or other out-of-pocket expenses, the Court will not preserve a CPA claim based on its own conjecture.

Given all of the above, the Court finds Plaintiffs have failed to make a sufficient showing on this element as well, and dismissal is independently warranted under *Celotex.*

### 4.  Remaining Warranty Claims

Nissan moves to dismiss all of Plaintiffs' claims, including their warranty claims. Dkt. #193 at 7 ("the Court should… dismiss Plaintiffs' complaint with prejudice").  Nissan attacks the breach of warranty claims in a blink-and-you'll-miss-it way.  Dkt. #193 at 15–16.  Plaintiffs do not address their warranty claims at all, and thus fail to make a "sufficient showing" on the essential elements of these claims.  Even if they had, the Court would likely dismiss for lack of damages given the above.  Dismissal is warranted. *Celotex, supra.*

## IV.   CONCLUSION

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that Defendants' Motion for Summary Judgment, Dkt. #193, is GRANTED.  All of Plaintiff Lohr and Plaintiff Sindogi's claims are DISMISSED WITH PREJUDICE.  The Court believes the case cannot proceed given this ruling and DIRECTS the parties to file a joint status report within seven (7) days as to any remaining issues.

DATED this 9th day of May, 2022.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE